**SOUTHERN OIL CORPORATION v. YALE NATURAL GAS CO.**

No. 10766—Opinion Filed Feb. 27, 1923.

Rehearing Denied April 3, 1923.

(Syllabus.)

1. **Corporation Commission—Rate Regulation of Public Utilities—Effect of Contracts.**

By chapter 93, Session Laws 1913, jurisdiction is conferred upon the Corporation Commission to fix and establish the rates to be charged by the public utilities therein enumerated, and this jurisdiction cannot be defeated by a public service corporation and a private consumer entering into a contract whereby the corporation agrees to furnish its commodity for a term of years at a stipulated rate.

2. **Gas — Public Utility — Contract Rate With Consumer—Validity—Jurisdiction of Corporation Commission.**

Where a public service corporation and a private consumer entered into a contract on January 4, 1916, by the terms. of which the corporation agreed to sell and deliver to the consumer natural gas at a specified rate for a term of three years, such contract was invalid when made, neither of the parties were obligated to fulfill its terms, and the Corporation Commission had the power to fix and establish a different rate at any time.

3. **Corporation Commission — Jurisdiction.**

The Corporation Commission has only such jurisdiction and authority as is expressly or by necessary implication conferred upon it by the Constitution and the statutes.

4. **Same—Public Utility Rates—Approval of Contract With Consumer—Effect.**

The Corporation Commission is without jurisdiction or authority to approve a contract between a public service corporation and a private consumer, by which the rate to be charged for a public commodity is attempted to be fixed for a period of years, and the approval of such contract by the Corporation Commission would not have the effect of establishing the price agreed upon as a rate, and such approval would add nothing to the validity of the contract.

5. **Same — Invalidity of Contract Rate — Power to Establish Higher Rate—Constitutional Law.**

A contract between a public service corporation and a private consumer attempting to fix the rate at which a public commodity shall be sold by the one to the other, for a period of years, being invalid when made, no vested rights could accrue thereunder, and a subsequent order of the Corporation Commission establishing a higher rate for such commodity did not impair the obligation of such contract.

6. **Gas—Rate-Making by Corporation Commission—Necessity for Notice.**

Rate-making being a legislative power, notice to parties affected by an order of the Corporation Commission fixing gas rates, upon the application of the public service corporation, need not be given unless specifically required by statute.

7. **Corporation Commission — Appeals from Action — Exclusive Jurisdiction of Supreme Court.**

By the provisions of section 20, art. 9, of the Constitution no court of the state (except the Supreme Court on appeal) shall have jurisdiction to review, reverse, correct, or annul any action of the Corporation Commission within the scope of its authority.

Error from District Court, Payne County; Arthur R. Swank, Judge.

Action by the Southern Oil Corporation against the Yale Natural Gas Company for injunction. Judgment for defendant, and plaintiff appeals. Affirmed.

Rollin E. Gish, for plaintiff in error.

Geo. A. Henshaw and A. Carey Hough, for defendant in error.

NICHOLSON, J. This suit was instituted by the Southern Oil Corporation, as plaintiff, against the Yale Natural Gas Company, as defendant, seeking to enjoin the defendant from shutting off or failing to deliver to the plaintiff natural gas for fuel purposes. The gist of plaintiff's action, as set forth in its petition, is that on or about the 4th day of January, 1916, the parties hereto entered into a contract in writing, a copy of which was attached to the petition as an exhibit, by the terms of which the defendant agreed to sell and deliver to the plaintiff, at its refinery, natural gas for fuel purposes at the price of five cents per 1,000 cubic feet for one year, and six cents per 1,000 cubic feet for the next two years, said contract covering a total period of three years; that said contract was duly approved and the rate and terms thereof confirmed by the Corporation Commission of the state of Oklahoma on January 26, 1916; that in November, 1918, said defendant, in violation of the terms of said contract, demanded of the plaintiff 15 cents per 1,000 cubic feet for gas furnished during the month of October, 1918, which it is alleged was an unreasonable and unlawful rate for said gas; that plaintiff tendered to defendant payment for all gas used at the contract rate of six cents per 1,000 cubic feet, but defendant refused to accept

the same, and will, unless restrained by order of the court, shut off the supply of gas to plaintiff's refinery on December 15, 1918, unless said gas is paid for at the rate of 15 cents per 1,000 cubic feet; that plaintiff has at all times complied with the terms of said contract upon its part.

The defendant filed answer in which it admitted the execution of said contract and that the plaintiff had complied with the terms thereof up to October 1, 1918; that for the month of November, 1918, the plaintiff tendered to it the amount which would have been due under the terms of said contract; and by way of affirmative defense it was averred, in substance, that on January 4, 1916, the defendant was a public service corporation, engaged in the business of producing and selling natural gas to a large number of consumers, including refineries and other industries in the town of Yale, and to the inhabitants of said town, and that the plaintiff at the time of the execution of said contract knew that the defendant was a public service corporation and that it was subject to all the laws and regulations of the state of Oklahoma then in force as well as all future rulings or regulations and control of the Corporation Commission of the state; that said commission promulgated a general order No. 755, effective November 15, 1913, by which it required any gas company operating as a public service corporation to secure the approval of the Corporation Commission before advancing rates.

It was further averred that on and prior to August 3, 1918, the supply of natural gas in the vicinity of Yale, from which defendant obtained its gas supply, became largely depleted and it became necessary for the defendant to drill new wells and lay new pipe lines in order that it might discharge its duties to the public and its consumers, and that it was necessary that the rates theretofore charged by it be increased; that in compliance with the above order of the Corporation Commission the defendant filed with the commission its application for an order permitting it to advance its rates; that said commission on October 1, 1918, made an order permitting the defendant to increase its rates from six cents to 15 cents per 1,000 cubic feet, and that it was by virtue of this order that the increase in rates was made.

To this answer the plaintiff filed a very lengthy reply, in which it admitted the order of the Corporation Commission as set out by the defendant, but alleged that such order was ineffective, invalid, and void in so far as it attempted to modify or cancel the rights of the plaintiff under the contract of January 4, 1916.

It was further alleged that the Corporation Commission was without jurisdiction to promulgate said order, for the reason that the same was not published for four consecutive weeks in a newspaper of general circulation at the state capital as provided by section 18, art. 9, of the Constitution, and that no notice of the application to increase rates was given as provided thereby, and for that reason the increased rate did not become effective; that said order was ineffectual to cancel or destroy the rights of the plaintiff under and by virtue of the contract of January 4, 1916, for the reason that the subsequent order of the commission increasing the rate would operate to deprive the plaintiff of its property without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States, and violates sections 6 and 7 of the Bill of Rights of the Constitution of the state of Oklahoma.

It was further alleged that the Corporation Commission was authorized under the Constitution and laws of the state to make and authorize the contract of January 4, 1916, and by its order of January 26, 1916, did authorize and make binding upon the plaintiff and defendant the provisions of said contract, and that the subsequent order increasing the rate did not, by its terms, apply to the holders of contracts for natural gas for a fixed period of time, and the commission did not find that the defendant must raise its rates to holders of such contracts as distinguished from other individual consumers.

To this reply the defendant filed a general demurrer, which was by the court sustained. The plaintiff elected to stand on its petition and reply, whereupon judgment was rendered dismissing the action, and the plaintiff has appealed.

The plaintiff makes numerous assignments of error, which are argued from various angles, but all of these lead to the one pivotal question of the effect of the contract of January 4, 1916.

It is first urged that the order made by the Corporation Commission on January 26, 1916, gave express authority and its plain meaning was to authorize the parties to make and enter into the contract dated January 4, 1916, which established the rates for a term of three years under which plaintiff bases its claim.

It appears from the order that the Southern Oil Corporation filed its complaint against the Yale Natural Gas Company alleging that the defendant refused to furnish the complainant gas except under a three-year contract whereby plaintiff was required to pay five cents per 1,000 cubic feet for gas for the first year, and six cents per 1,000 cubic feet for the two succeeding years. The defendant answered the complaint stating that it had not refused to furnish the plaintiff gas, but that it had asked complainant to enter into a contract whereby it agreed to purchase of the defendant, at the rate of five cents per 1,000 cubic feet for one year and six cents per 1,000 cubic feet for the two succeeding years, all the natural gas used in plaintiff's refinery for a period of three years, otherwise to pay eight cents per 1,000 cubic feet for all gas used.

The commission in a lengthy opinion held that the terms offered by the defendant were not unreasonable, and did not amount to a discrimination against the complainant, and that complainant might elect to pay for gas under either of the two plans and rates offered by the defendant, and dismissed the complaint without prejudice. The plaintiff elected to pay for gas under the three-year contract, and by the terms thereof bound itself to purchase all gas used by it from the defendant for the term of three years; so the inquiry presented is, Did this order of the commission have the effect of fixing a rate to be charged the complainant for a period of three years?

The order did not in express terms fix the rate, but held that the evidence offered did not establish a case of discrimination and was insufficient from which to determine whether or not the temporary rate of eight cents per 1,000 cubic feet was reasonable. There is nothing in the order indicating that the commission was asked to approve the contract or fix the rate, and a reading of the order convinces us that the only question considered by the commission was whether or not the rate charged amounted to a discrimination against the complainant, and, that the commission refrained from fixing a rate. Having arrived at this conclusion, it becomes necessary to determine the effect of the contract between the parties.

By section 18, art. 9, of the Constitution, the Corporation Commission was granted the power and authority and charged with the duty of supervising, regulating, and controlling all transportation and transmission companies doing business in the state, and by section 19, art. 9, of the Constitution, it was provided that the Corporation Commission might be vested with such additional powers and charged with such other duty as might be prescribed by law in connection with the visitation, regulation, and control of corporations, or with the prescribing or enforcing of rates and charges to be observed in the conduct of all business where the state has the right to prescribe the rates and charges in connection therewith. Under the constitutional authority thus conferred, the Legislature, by chapter 93, Session Laws 1913, extended the jurisdiction of the Corporation Commission so as to include public utilities other than transportation and transmission companies. By this act, the Corporation Commission was vested with the power to fix and establish the rates to be charged by public utilities for the commodity furnished by them, and the defendant falls squarely within the term "public utility," as defined by said act. So that, by these constitutional and statutory provisions, the power to fix the rates to be charged by the defendant was reserved to the state, acting by and through the Corporation Commission, and by section 7, art. 18, of the Constitution this power could not be surrendered. With these provisions of law in force, the parties entered into the contract of January 4, 1916, and the plaintiff by this suit seeks to enforce the terms of such contract.

It is apparent that by this contract the parties intended to fix the rate to be charged and paid for gas during a period of three years and in the absence of such constitutional and statutory provisions of law as above referred to, in the ordinary affairs of life, where the public welfare was not involved, the right to make such contract touching private property rights would be unquestioned, but at the time this contract was entered into the defendant was a public service corporation and the commodity produced and sold by it was a public commodity affected by the public use, and not private property. The defendant was under the supervision of the Corporation Commission, and such commission had the power and was charged with the duty of fixing and establishing the rates to be charged by the defendant. Hence, the defendant had not the power to bind itself to the terms of the contract, this power having been withdrawn from it. The power to fix the rates to be charged by it had been reposed absolutely in the Corporation Commission for the public good of the state. Neither party was obligated to carry out or fulfill the terms of the contract, and the same in no way impaired the rights of the commission to establish the rate of October 1,

1918. City of Pawhuska v. Pawhuska Oil & Gas Co. 64 Okla. 214, 166 Pac. 1058; City of Bartlesville v. Corporation Commission, 82 Okla. 160, 199 Pac. 396; City of Sapulpa v. Oklahoma Natural Gas Co., 79 Okla. 196, 192 Pac. 224; City of Durant v. Consumers' Light & Power Co., 71 Oklahoma, 177 Pac. 361; Guthrie Gas, Light, Fuel & Improvement Co. v. Board of Ed. of the City of Guthrie, 64 Okla. 157, 166 Pac. 128; Ohio & Colorado Smelter Co. v. Public Utilities Commission (Colo.) 187 Pac. 1082; Raymond Lumber Co. v. Raymond Light & Water Co. (Wash.) 159 Pac. 133.

It is next contended that the Corporation Commission was authorized under section 18, art 9, of the Constitution, and chapter 93, Session Laws 1913, to approve the contract, and the order of January 26, 1916, did approve said contract and was a valid order.

The only language found in the order of the Corporation Commission indicating an approval of the contract is: "The complainant can elect to take gas under a three-year contract, or to apply the rate given to temporary consumers;" and "The commission finds that connection has been made from defendant's distributing lines to complainant's refinery, and that complainant can elect to pay for gas under either one of the two plans and rates offered by the defendant."

If we give to this language the meaning contended for, and hold that by it the commission approved the contract, then we must look for some constitutional or statutory authority authorizing the commission to approve a contract between a public service corporation and a consumer. This authority is not conferred by section 18, art. 9, of the Constitution, nor by chapter 93 of the Session Laws of 1913, as contended by the plaintiff, and we can find no constitutional or statutory provision conferring this power. The Corporation Commission has only such jurisdiction and authority as is expressly or by necessary implication conferred upon it by the Constitution and the statutes. Oklahoma City et al. v. Corporation Commission et al., 80 Okla. 194, 195 Pac. 498.

The Corporation Commission not having been vested with the power to approve contracts between public service corporations and consumers, the approval of the contract by it, if we treat its order of January 26, 1916, as such approval, added nothing to the validity of the contract. The Corporation Commission has the power and is charged with the duty of fixing and establishing rates, and this power can only be exercised in the manner provided by law.

In view of what has already been said, the next contention made, viz.: "That when such rate and term had been approved by the commission, and a contract entered into pursuant to its authority, the parties acquired vested property rights thereon and no subsequent legislative action by the commission or other body could impair the obligation of such contract," is without merit. The contract being invalid when made, no vested property rights could accrue thereunder.

The contention of plaintiff that it was entitled to notice of the proceedings in which the Corporation Commission established the rate for gas to be charged by the defendant at 15 cents per 1,000 cubic feet, thereby terminating its contractual rights, is likewise without merit. This rate was fixed upon the application of the defendant, and no notice to its consumers or patrons was required. Section 18, art. 9, of the Constitution provides for notice of at least ten days to be given by the commission to the company or companies to be affected by any rate, charge, classification, order, rule, regulation, or requirement. This clearly means that notice shall be given to the public service corporation which is to be affected by said rate, and does not mean that notice must be given to its patrons. Rate-making being a legislative power, notice to parties affected by an order of the Corporation Commission fixing gas rates upon the application of the public service corporation need not be given unless specifically required by statute. City of Bartlesville v. Corporation Commission, 82 Okla. 160, 199 Pac. 396.

In presenting the only contention remaining undisposed of, the plaintiff directs our attention to the last two paragraphs of the reply, wherein it is specifically pleaded that there had never been any issue presented to the commission, nor any decision by the commission holding that it would be either impossible or unprofitable, taking the contract as a whole, for the defendant to be required to fulfill it. This question could not be urged in this case. The commission was vested with jurisdiction to fix and establish the rate for gas to be charged by the defendant. It established the rate of 15 cents per 1,000 cubic feet. The sufficiency of the showing made to sustain such order and the reasonableness and justness of the action of the commission could only be questioned by appeal from the order of the commission to the Supreme Court.

By section 20, art. 9, of the Constitution it is provided that no court of the state (except the Supreme Court of appeal) shall have jurisdiction to review, reverse, correct, or

annul any action of the commission within the scope of its authority. Therefore, the district court was without jurisdiction to review the action of the commission of October, 1918.

No reversible error appearing in the record, the judgment of the trial court is affirmed.

JOHNSON, V. C. J., and KANE, KENNAMER, COCHRAN, and BRANSON, JJ., concur.