**DICKINSON, Trustee in Bankruptcy, v. SOUTHWESTERN NATURAL GAS CO.**

No. 26883. Feb. 23, 1937.

Rehearing Denied April 6, 1937.

Jno. W. Porter, for plaintiff in error.

Underwood, Canterbury, Pinson & Lupardus, for defendant in error.

BUSBY, J. This is an action in mandamus by one public utility to compel another to furnish it gas for resale to consumers in the city of Muskogee. It is presented on appeal from a judgment of the district court of Muskogee county denying a peremptory writ.

The Cherokee Public Service Company is a public utility engaged in wholesaling gas for resale through a distributing company to ultimate consumers in Muskogee and other cities and towns in the same section of the state. Apparently only one distributing company purchases from it, namely, the Municipal Gas Company, which has distributing systems in Muskogee and other municipalities. There is a corporate affinity between these two companies of such a nature that for many purposes each may be considered an alter ego of the other. The Municipal Gas Company is operating its distribution system in the city of Muskogee under a franchise which, of course, is neither perpetual (section 5 of art. 18, Okla. Const.) nor exclusive (section 7 of art. 18, Okla. Const.)

The Oklahoma Natural Gas Company is also operating a gas distributing system in the city of Muskogee in competition with the Municipl Gas Company. The Oklahoma Natural Gas Company has no franchise, and though tolerated and permitted to continue its operations, it is subject to the hazard of being declared a trespasser and denied the right to further exercise the privilege. Such an occurrence would force gas consumers in Muskogee to rely upon the Municipal Gas Company or such other company as might in the future be available and acceptable to furnish gas distribution service.

The Oklahoma Natural Gas Company buys its gas from the Southwestern Natural

Gas Company, which, when recognized as a distinct corporate entity, occupies the position of selling gas at wholesale as a public utility to the distributing company. For a number of years there has existed a corporate affinity between the Oklahoma Natural Gas Company or its predecessors and the wholesale public utility from which it purchased gas for sale in Muskogee. In more recent years this affiliation has been strengthened until now for all practical purposes it owns the Southwestern Natural Gas Company.

The Southwestern Natural Gas Company has an adequate supply of gas. The supply of the Cherokee Public Service Company is limited, and though at the time this case was tried and finally determined (May, 1935) in the court below, such supply was temporarily adequate for then existing needs. However, there existed the possibility that depletion would render the supply inadequate in the future and the further possibility that under extreme conditions of winter weather the supply, even though not depleted, would prove inadequate.

The managing officers of the Cherokee Public Service Company expressed a disposition to supplement their supply of gas from other sources if such could be located, rather than purchase from the Southwestern Natural at the prevailing or established rate. From this expressed disposition the trial court found that the desire of the plaintiff was to force the maintenance of a connection in order that future purchases of gas might be made when and if needed. In other words, it was determined that the demand was for what is known in the industry as "standby service." The trial court specifically so found.

The Cherokee Public Service Company is in bankruptcy and operating under a trustee appointed by a federal court in Arkansas. The Municipal Gas Company is apparently also in financial difficulties.

It appears from the record that the opposing companies involved in this action have previously had dealings with each other concerning the sale of gas by the Southwestern Natural as a wholesale public utility to the Municipal Gas Company for distribution to ultimate consumers in municipalities other than Muskogee. In connection with these prior dealings difficulty in effecting financial settlement for the purchase price of gas has been experienced.

This action was instituted on the 3rd day of January, 1935. At the time of its institution an emergency existed in that by reason of prevailing cold weather and the shortage of the supply of gas of the Cherokee Public Service Company, it was impossible for the Municipal Gas Company, which purchased from the Cherokee Public Service Company, to adequately take care of its ultimate consumers in the city of Muskogee. In order to meet this emergency, the trial court ordered that a connection be made with the line of the Southwestern Natural Gas Company in order that hardship and suffering might be prevented among that portion of the populace of the municipality of Muskogee who relied upon the Municipal Gas Company for service. At the time this case was finally tried in May, 1935, the cold weather had abated and the emergency connections had been severed.

At the conclusion of the evidence in this case the trial court upon request made specific findings of fact and conclusions of law. It then pronounced its ultimate judgment denying peremptory writ of mandamus. The precise basis upon which ultimate relief was denied is not specifically designated in the findings of the trial court. However, certain theories which the defendant in error, Southwestern Natural Gas Company, urges should be employed as a basis for affirmance were specifically excluded. For instance, the defendant company urges that the justification for denial of relief should be found in the fact that the two companies are competitors within the city of Muskogee by reason of their respective affiliations with distributing companies situated therein. This was not the basis of the trial court's decision.

It is true that, as a general rule, a public utility cannot or should not be compelled to furnish service to a competitive utility operating in the same field, but this general rule is not without its exceptions and limitations, and the trial court entertained grave doubts as to the propriety of its invocation by a company which traced the competitive feature through affiliation with a distributing company operating without a franchise in the municipality designed to be served. The trial court's declination to rest its judgment upon this basis is expressed in the following excerpt from its conclusions as incorporated in the journal entry:

"This brings the question as to whether the defendant (its owner, the Oklahoma Natural Gas Company, being a trespasser in the streets of Muskogee) can plead the issue of furnishing service to a competitor. On this question no opinion is expressed by the trial court, but the observation is made

in passing that to permit it to so do is to permit it to derive legal advantage from its own wrong."

We decline in affirming this case to broaden the basis of the decision in compliance with the desire of the defendant in error.

The apparent basis of the trial court's decision was that in view of the service demanded, that is, "standby service," in view of the disposition of the purchasing company to acquire its gas elsewhere and in view of the previous financial differences between the companies, a clear legal right to the service demanded was not established, and, as a matter of discretion, the writ should be denied. The conclusion of the trial court was stated as follows:

"By way of conclusion, the court will call attention to the fact that the writ of mandamus is not a matter of equitable cognizance, but it is a writ of clear legal right, and will hold that under the statute laws of this state and the rules laid down by the Supreme Court of this state in its opinions, such clear legal right to the mandatory order prayed for does not exist in the plaintiff under the evidence submitted and the findings above set out—and to which last conclusion of the court the plaintiff excepts," and its judgment was thus expressed:

"Under all the evidence submitted herein, and all the above considerations, findings and conclusions, it is therefore ordered, adjudged and decreed that the plaintiff take nothing on account of its petition herein, but that same be and it is hereby dismissed with prejudice and at its cost—and to all of which order and judgment the plaintiff excepts and its exception is allowed and noted of record herein."

Mandamus is an appropriate remedy to compel a public utility to render service to a consumer who has a clear legal right thereto and is available at the instance of a gas distributing company to compel the rendition of wholesale service in connection with which the public obligation is indirect. Southwestern Natural Gas Co. v. Cherokee Public Service Co., 172 Okla. 325, 44 P. (2d) 945; see, also, Pond Public Utilities (4th Ed.) par. 277, p. 592, et seq.

However, a public utility doing a limited wholesale business will not be compelled to extend its service to municipalities not previously served. Oklahoma Natural Gas Co. v. Corporation Commission, 88 Okla. 51, 211 P. 401. Thus the extent to which and manner in which a public utility has dedicated itself and its property to the use of the public claims a degree of consideration in this type of litigation. In re Vance, Oklahoma Natural Gas Co. v. Scott, 115 Okla. 8, 241

P. 164. However, the extent to which the public duty has been assumed rather than the manner selected for its accomplishment is a guiding element. It is not to be inferred from what we have said that a wholesale public utility, by failing to sell to more than one competing distributing company, can establish a system of approved discrimination between such competing companies which might work to the ultimate detriment of the purchasing public. On the other hand, an element of fair play is required on the part of the purchasing company which militates against the judicial approval of a plan which would require a wholesale company to stand in readiness to render a service which might never be required and thus assume a potential burden with only a possibility of remuneration.

Upon the considerations reviewed, we hold, as did the trial court, that a clear legal right to the service demanded has not been established and the writ of mandamus was properly denied.

Our decision in this case is not to be taken as an indication that emergency service cannot be required upon proper conditions when and if an emergency arises making such service necessary for the protection of the purchasing public in Muskogee. In order that the judgment of the trial court may not be considered as a pre-adjudication of a case involving a demand for such service, the judgment rendered therein will be modified by striking therefrom the words "with prejudice." As so modified, the decision is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS, and GIBSON, JJ., concur.